ctronically FILED by Superior Court of California, County of Los Angeles on 12/28/2018 06:28 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Alvarez, Deputy Clerk
18STCV10315

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Option Care Enterprises, Inc. See Attachment 1.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Jennifer Harwood

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse, Central District<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER:<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Carney R. Shegerian, Esq. (SBN 150461)          (310)860-0770
Shegerian & Associates, Inc.
225 Santa Monica, Suite 700, Santa Monica, CA 90401

| DATE:<br>*(Fecha)* December 28, 2018 | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* Option Care Enterprises, Inc

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| [SEAL] | |
|---|---|

Page 1 of 1

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hardwood v. Option Care Enterprises. Inc., et, al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Option Care, Option Care Home Care, Inc., Option Care Home Health Of California, Inc., Option Care, Inc., Walgreen Co., Walgreens Boots Alliance, Inc., Madison Dearborn Partners, John C. Rademacher, Lori Hart, Mike Rude, and DOES 1 to 100, inclusive,

Page 1 of 1

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Hardwood v. Option Care Enterprises. Inc., et, al. | |

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Option Care, Option Care Home Care, Inc., Option Care Home Health Of California, Inc., Option Care, Inc., Walgreen Co., Walgreens Boots Alliance, Inc., Madison Dearborn Partners, John C. Rademacher, Lori Hart, Mike Rude, and DOES 1 to 100, inclusive,

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

ctronically FILED by Superior Court of California, County of Los Angeles on 12/28/2018 09:31 AM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Hardwood v. Option Care Enterprises. Inc., et, al. | |

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES   CLASS ACTION? ☐ YES  LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 15 ☐ HOURS/ ☒ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Hardwood v. Option Care Enterprises. Inc.. et. al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☒ A6037  Wrongful Termination | 1.②3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Hardwood v. Option Care Enterprises. Inc., et. al. | |

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Hardwood v. Option Care Enterprises. Inc., et, al. | |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS:<br>Various addresses for Los Angeles |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|
| Los Angeles | CA | 90012 | |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: ___December 28, 2018___

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

18STCV10315

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Barbara Scheper

1　Carney R. Shegerian, Esq., State Bar No. 150461
　　CShegerian@Shegerianlaw.com
2　Anthony Nguyen, Esq., State Bar No. 259154
　　ANguyen@Shegerianlaw.com
3　Astineh Arakelian, Esq., State Bar No. 265761
　　AArakelian@Shegerianlaw.com
4　SHEGERIAN & ASSOCIATES, INC.
　　225 Santa Monica Boulevard, Suite 700
5　Santa Monica, California 90401
　　Telephone Number: (310) 860-0770
6　Facsimile Number: (310) 860-0771

7　Attorneys for Plaintiff,
　　JENNIFER HARWOOD

8

9　## SUPERIOR COURT OF THE STATE OF CALIFORNIA

10　## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11

| | |
|---|---|
| JENNIFER HARWOOD, | Case No.: |
| Plaintiff, | **PLAINTIFF JENNIFER HARWOOD'S COMPLAINT FOR DAMAGES FOR:** |
| vs. | **(1) DISCRIMINATION, HARASSMENT, AND RETALIATION ON THE BASIS OF DISABILITY IN VIOLATION OF FEHA;** |
| OPTION CARE ENTERPRISES, INC., OPTION CARE, OPTION CARE HOME CARE, INC., OPTION CARE HOME HEALTH OF CALIFORNIA, INC., OPTION CARE, INC., WALGREEN CO., WALGREENS BOOTS ALLIANCE, INC., MADISON DEARBORN PARTNERS, JOHN C. RADEMACHER, LORI HART, MIKE RUDE, and DOES 1 to 100, inclusive, | **(2) DISCRIMINATION, HARASSMENT, AND RETALIATION ON THE BASIS OF SEX IN VIOLATION OF FEHA;** |
| | **(3) DISCRIMINATION, HARASSMENT, AND RETALIATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;** |
| Defendants. | **(4) FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF FEHA;** |
| | **(5) FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF FEHA;** |
| | **(6) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF FEHA;** |

1 )

        **(7)  BREACH OF EXPRESS ORAL**
2 )        **CONTRACT NOT TO TERMINATE**
         **EMPLOYMENT WITHOUT GOOD**
3 )        **CAUSE;**

4 )    **(8)  BREACH OF IMPLIED-IN-FACT**
         **CONTRACT NOT TO TERMINATE**
5 )        **EMPLOYMENT WITHOUT GOOD**
         **CAUSE;**
6 )

         **(9)  NEGLIGENT HIRING,**
7 )        **SUPERVISION, AND RETENTION;**

8 )  **(10)  WRONGFUL TERMINATION OF**
         **EMPLOYMENT IN VIOLATION OF**
9 )        **PUBLIC POLICY;**

10 )  **(11)  VIOLATION OF LABOR CODE**
         **§ 1102.5;**
11 )

         **(12)  INTENTIONAL INFLICTION OF**
12 )        **EMOTIONAL DISTRESS;**

13     ) **DEMAND FOR JURY TRIAL**

PLAINTIFF'S COMPLAINT FOR DAMAGES

# TABLE OF CONTENTS

**Page**

SUMMARY ............................................................................................................ 1

PARTIES ............................................................................................................... 1

FACTS COMMON TO ALL CAUSES OF ACTION ........................................ 3

FIRST CAUSE OF ACTION .............................................................................. 13

    (Violation of FEHA (Government Code § 12900, *et seq.*) (Discrimination,
    Harassment, and Retaliation on the Basis of Disability)—Against All Entity
    Defendants and Does 1 to 100, Inclusive) ...................................................... 13

SECOND CAUSE OF ACTION ......................................................................... 15

    (Violation of FEHA (Government § 12900, *et seq.*) (Discrimination,
    Harassment, and Retaliation on the Basis of Sex)—Against All
    Entity Defendants and Does 1 to 100, Inclusive) ......................................... 15

THIRD CAUSE OF ACTION ............................................................................ 17

    (Violation of FEHA (Government § 12900, *et seq.*) (Discrimination,
    Harassment, and Retaliation on the Basis of Gender)—Against All
    Entity Defendants and Does 1 to 100, Inclusive) ......................................... 17

FOURTH CAUSE OF ACTION ........................................................................ 18

    (Violation of FEHA (Government Code § 12940(a), (i), (m), (n)) (Failure to
    Provide Reasonable Accommodation)—Against All Entity Defendants and
    Does 1 to 100, Inclusive) ............................................................................... 18

FIFTH CAUSE OF ACTION .............................................................................. 19

    (Failure to Engage in Interactive Process (Government Code § 12940(a), (i),
    (m), (n))—Against All Entity Defendants and Does 1 to 100, Inclusive) ..... 19

SIXTH CAUSE OF ACTION ............................................................................. 20

    (Violation of FEHA (Government Code § 12940(k) (Failure to Prevent
    Discrimination, Harassment, and Retaliation)—Against All Entity Defendants
    and Does 1 to 100, Inclusive) ........................................................................ 20

SEVENTH CAUSE OF ACTION ....................................................................... 22

    (Breach of Express Oral Contract Not to Terminate Employment Without
    Good Cause)—Against All Entity Defendants and Does 1 to 100, Inclusive) .... 22

EIGHTH CAUSE OF ACTION .......................................................................... 22

    (Breach of Implied-in-Fact Contract Not to Terminate Employment Without
    Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603;
    Civil Code § 1622)—Against All Entity Defendants and Does 1 to 100,
    Inclusive) ........................................................................................................ 22

-i-

NINTH CAUSE OF ACTION ................................................................ 23

    (Negligent Hiring, Supervision, and Retention—Against All Entity
    Defendants and Does 1 to 100, Inclusive) ........................................ 23

TENTH CAUSE OF ACTION .............................................................. 24

    (Wrongful Termination of Employment in Violation of Public Policy (Labor
    Code § 1102.5; FEHA, Government Code § 12900, *et seq.*)—Against All
    Entity Defendants and Does 1 to 100, Inclusive) .............................. 24

ELEVENTH CAUSE OF ACTION ....................................................... 25

    (Violations of Labor Code § 1102.5, *et seq.*—Against All Entity Defendants
    and Does 1 to 100, Inclusive) .......................................................... 25

TWELFTH CAUSE OF ACTION .......................................................... 25

    (Intentional Infliction of Emotional Distress—Against All Defendants and
    Does 1 to 100, Inclusive) ................................................................ 25

PRAYER ............................................................................................. 26

1   Plaintiff, Jennifer Harwood, alleges, on the basis of personal knowledge and/or
2   information and belief:

3

4                                    **SUMMARY**

5   This is an action by plaintiff, Jennifer Harwood ("plaintiff" or "Harwood"), whose
6   employment with defendants Option Care Enterprises, Inc. ("Option Care Enterprises"),
7   Option Care ("Option Care"), Option Care Home Care, Inc. ("Option Care Home Care"),
8   Option Care Home Health of California, Inc. ("Option Care Home Health"), Option
9   Care, Inc. ("Option Care, Inc."), Walgreen Co. ("Walgreen Co."), Walgreens Boots
10  Alliance, Inc. ("Walgreens Boots"), and defendant Madison Dearborn Partners
11  ("Madison Dearborn") (collectively the "entity defendants") was wrongfully terminated.
12  Plaintiff brings this action against defendants for economic, non-economic,
13  compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment
14  interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable
15  attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil
16  Procedure section 1021.5.

17

18                                    **PARTIES**

19      1. *Plaintiff:*   Plaintiff Harwood is, and at all times mentioned in this Complaint
20  was, a resident of the County of Orange, California.

21      2. *Defendants:*   The entity defendants are, and at all times mentioned in this
22  Complaint were, authorized to operate by the State of California and the United States
23  government and authorized and qualified to do business in Los Angeles County and the
24  County of Orange.  Defendant entities' place of business, where the following causes of
25  action took place, was and is in the County of Orange and Los Angeles County.

26      3. Defendants Walgreen Co.'s and Walgreens Boots's principle place of business
27  is in California.  Walgreen Co.'s and Walgreens Boots's contain an amount of business
28  activity (in number of employees, sales, production and operation activity and income)

---

1   in California that is significantly larger than any other state in which the corporation

2   conducts business.  Therefore, at all relevant times, Walgreen Co. and Walgreens Boots

3   were citizens of the state of California.

4       4.  Defendant John C. Rademacher ("defendant" or "Rademacher") is, and at all

5   times mentioned in this Complaint was, a supervisor with defendants.  Defendant

6   Rademacher is, and at all times mentioned in this Complaint was, a resident of Illinois.

7   Defendant Lori Hart ("defendant" or "Hart") is, and at all times mentioned in this

8   Complaint was, a supervisor with defendants.  Defendant Hart is, and at all times

9   mentioned in this Complaint was, a resident of Salem, Oregon.  Defendant Mike Rude

10  ("defendant" or "Rude") is, and at all times mentioned in this Complaint was, a

11  supervisor with defendants.  Defendant Rude is, and at all times mentioned in this

12  Complaint was, a resident of Illinois.

13      5.  *Doe defendants:*  Defendants Does 1 to 100, inclusive, are sued under fictitious

14  names pursuant to Code of Civil Procedure section 474.  Plaintiff is informed and be-

15  lieves, and on that basis alleges, that each of the defendants sued under fictitious names is

16  in some manner responsible for the wrongs and damages alleged below, in so acting was

17  functioning as the agent, servant, partner, and employee of the co-defendants, and in tak-

18  ing the actions mentioned below was acting within the course and scope of his or her auth-

19  ority as such agent, servant, partner, and employee, with the permission and consent of the

20  co-defendants.  The named defendants and Doe defendants are sometimes hereafter re-

21  ferred to, collectively and/or individually, as "defendants."

22      6.  *Relationship of defendants:*  All defendants compelled, coerced, aided, and/or

23  abetted the discrimination, retaliation, and harassment alleged in this Complaint, which

24  conduct is prohibited under California Government Code section 12940(i).  All defen-

25  dants were responsible for the events and damages alleged herein, including on the fol-

26  lowing bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or

27  more of the defendants was the agent or employee, and/or acted under the control or

28  supervision, of one or more of the remaining defendants and, in committing the acts

alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

7. The entity defendants both directly and indirectly employed plaintiff Harwood, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

8. In addition, the entity defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

9. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

**VENUE**

10. The actions at issue in this case occurred in the State of California, in the County of Los Angeles and the County of Orange. Under the California Fair Employment Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained ... or in the county in which the aggrieved person would have worked or would have had access to the public accommodation but for the alleged unlawful practice, but if the defendant is not found within any of thse counties, an action may be brought within the county of the defendant's residence or principal office ...

1 | (California Government Code § 12965(b).)

2 | 11. Here, Plaintiff worked in California, including in the Counties of Los Angeles
3 | and Orange. Her principal office was in her home, but her primary function being sales,
4 | required her to travel throughout California, including the Los Angeles County, where
5 | she was unlawfully deprived of medically necessary work accommodations and a
6 | medical leave. In fact, a central basis for her claim (and adverse employment action) is
7 | the discriminatory, harassing, and retaliatory conduct she was subjected to while
8 | working in the counties of Los Angeles and Orange.

9 | 12. Plaintiff visited the Los Angeles County locations to oversee the sales in those
10 | locations and to manage direct reports in the Los Angeles County locations.

11 | 13. Plaintiff, as the vice president of sales, west region, oversaw multiple locations
12 | throughout California. The majority of her direct and indirect reports in the west region
13 | were in California.

14 | 14. What's more, Defendants maintain two principal offices in Los Angeles that are
15 | within the County of Los Angeles.

16 | 15. "[I]n the absence of an affirmative showing to the contrary, the presumption is
17 | that the county in which the title of the actions shows that the case is brought is, *prima*
18 | *facie*, the proper county for the commencement and trial of the action." (*Mission Imports,*
19 | *Inc. v. Superior Court* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section
20 | 12965(b) – thus affords a wide choice of venue to persons who bring actions under
21 | FEHA. (*Brown v. Superior Court* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions
22 | of the FEHA venue statute control in cases involving FEHA claims joined with non-
23 | FEHA claims arising from the same facts." (*Id.* at 487.)

24 |

25 | ### FACTS COMMON TO ALL CAUSES OF ACTION

26 | 16. *Plaintiff's hiring:* Plaintiff Harwood, a 57-year-old Caucasian woman, was
27 | employed by defendants for approximately one year, beginning on September 14, 2017,
28 | as area vice president of sales, west region.

17. *Plaintiff's job performance:*  Harwood worked diligently in her position until her employment was unlawfully terminated, on September 1, 2018.  At all times, she performed her job duties in an exemplary manner, and her supervisor praised her for her efforts to drive and deliver on the company's goals and commitments.  In fact, the only review she ever received from defendants was a glowing one.  Harwood reported to chief commercial officer Chris Hartman.

18. *Plaintiff's protected status and activity:*

   a.  Plaintiff suffered from a disability, post-traumatic stress disorder, during her employment with defendants.

   b.  Plaintiff requested reasonable accommodations for her disability.

   c.  Plaintiff is female.

19. *Defendants' adverse employment actions and behavior:*

   a.  On February 15, 2018, Harwood made a presentation on strategic planning in front of 35 of Option Care's leaders, including defendant Rademacher and an independent consulting firm.  The presentation had been approved by Michael H. Shapiro, Option Care's senior vice president and chief financial officer, and other senior leaders.  During the presentation, Harwood could see that defendant Rademacher was agitated, whispering and shaking his head in response to her.  At the end of the presentation, Harwood's supervisor, Hartman, boasted about her superb presentation.  However, when the presentation was complete, defendant Rademacher stood up and began to challenge Harwood aggressively in front of all other leaders and the consulting firm representatives, who witnessed and probably recorded the incident.  When he stood up, Rademacher picked up a stack of books, aggressively slammed them down, and in an angry and patronizing tone said, "I'm calling bullshit.  Half of the shit up there you are presenting isn't true."  Then he asked the crowd, "How can you let her get away with this?" and stormed out of the room.  Stunned and humiliated, Harwood walked off the stage and ran to the women's rest room, tearful and shaking.

   b.  When Harwood came out of the bathroom, she ran into defendant

Rademacher, who stopped her and admitted to intentionally targeting her, saying, "That wasn't about you. I'm pissed. We need to raise the bar. No one is paying attention. Everyone is on their phones." He admitted, "I decided to use you to make my point, and I decided it was a good idea because I didn't want to upset the apple cart." He continued, "It wasn't a performance review, but we just have to raise the bar."

c.   While Harwood was in the bathroom and while she was speaking to Rademacher, Hartman told everyone that what just had happened was inappropriate. After she returned to the presentation room, co-workers consoled her by apologizing for defendant Rademacher's behavior, saying things like "He's a dick. This is what he does." Hartman sat near her and agreed, "That was a really shitty thing for John to have done to you," adding, "You just have to turn the page," and "I'm going to talk to John."

d.   That afternoon, plaintiff was given her 90-day performance review, which was great.

e.   On February 17, perhaps recognizing the damaging magnitude of his actions at the February 15 meeting, defendant Rademacher sent an e-mail to the attendees of the meeting regarding the incident with Harwood, admitted to the team that his actions appeared "unfairly [to] single[] out" Harwood, and attempted to justify his actions by claiming that "I challenged us to 'raise our game.'" This was even more hurtful to Harwood.

f.   Subsequently, defendant Rude, the senior vice president of human resources, also acknowledged that defendant Rademacher's behavior was inappropriate. He asked if Harwood were "OK," and she said, "No, I am not OK." The next day, while Harwood was supposed to be in a commercial for the company, she was unable to participate because she was so anxious after defendant Rademacher's scornful treatment on February 15. Harwood specifically said she was not "prepared to do the commercial," but Jeremy Krick, director of marketing, insisted and tried to push her to do the commercial. She then complained to her supervisor, who said, "You should go ride your horse this weekend, and by Monday you'll be ready to tell John to f*ck off." Instead of

investigating her complaint, her supervisor told her to disregard the vulnerable emotional state she was in as a result of Rademacher's malicious comments and conduct. Harwood responded that she was not a robot, but he continued to insist, "You're just going to have to turn the page."

g. As a direct result of the incident in which defendant Rademacher berated her, Harwood's physician diagnosed her with anxiety, insomnia, and post-traumatic stress disorder related to trauma and prescribed medicines on February 23, 2018. Harwood was advised to take the medicines in particular when she was around Rademacher.

h. A few weeks later, in March, Harwood had to attend a national sales meeting in Las Vegas. That was the first time since the February presentation that she was in defendant Rademacher's physical presence. She immediately became extremely tense and anxious at the meeting. That evening, she continued to be anxious and was unable to sleep. When she left Las Vegas, she informed Option Care, in particular Benson Yang, area vice president of operations, of her diagnoses. Harwood explained that she intended to work through it. She told Yang the entire story of the February 15 incident and burst into tears. Yang acknowledged that defendant Rademacher's actions were "egregious."

i. In March of 2018, Harwood had a call with defendant Rademacher and told him that she loved her job and her team and that she intended to restore her relationship with him. Rademacher admitted to the wrongdoing, specifically "us[ing] the wrong tone, the wrong time, the wrong place." He admitted that things were intense in Las Vegas when he was in her presence. Despite his admissions, defendants did nothing to address his targeted actions or to ensure that he would not subject her to similar conduct in the future.

j. In April of 2018, defendant Rademacher targeted and scolded another female employee in front of the same audience before whom he had berated Harwood. He yelled at her, "You've done nothing in a year," and made the accusation that "Your team

1  has done nothing in a year." She marched out of the ballroom and took a flight back
2  home. The next day, that female employee filed a formal complaint. Mike Kirkbride,
3  another area vice president, later told the employee that, if she had been presenting with
4  a male employee, Rademacher would never treat another male employee in such a way:
5  "He doesn't do this to men; he only does this to women." On April 21, as he had done
6  before, defendant Rademacher sent an e-mail to the meeting attendees to justify his
7  actions by claiming, "By creating an environment in which we, as a leadership team can
8  get comfortable with challenging each other and driving constructive conflict will make
9  us stronger . . ." In his e-mail, he admitted to his outrageous targeting of the female
10 employee: "I fear that I may have pushed too far and too fast in some of my challenges
11 this week . . ." Nevertheless, he pretextually justified his actions as being for the better-
12 ment of the "high-standards culture" of the organization.

13        k.  On May 13, 2018, Harwood called defendant Rude and filed a formal com-
14 plaint with human resources against defendant Rademacher for his unlawful sex- and
15 gender-biased treatment. She described her concerns with lack of emotional safety and
16 hostility in the work place and her inability to do her job after Rademacher's attack.
17 While Rude promised her that an investigation would take place, no investigation was
18 ever done.

19        l.  On July 16, Harwood called in for another presentation via a webinar to
20 prepare for the in-person presentation. Hartman was required to be on the webinar call,
21 but he did not dial in until after the majority of the presentation was complete. The
22 purpose of the webinar was to ensure that the presentation was fully prepared. Despite
23 being fully prepared during the presentation, Harwood froze and was unable to make the
24 presentation because of the fear that she would be attacked again while she was present-
25 ing. She told her co-workers that she had post-traumatic stress disorder and that "I just
26 totally froze. I don't know what happened. I just froze." Consequently, the next day,
27 Harwood went to see her doctor, who placed her on leave, beginning July 18, for one
28 week.

1        m.   Immediately after Harwood presented her medical leave note to defendant

2    Hart, the director of human resources, Hart called her the same day and proposed a sepa-

3    ration package.  He asked why she needed to be on leave and told her that she was con-

4    cerned about Harwood's ability to do her job because she had to go to meetings and

5    make presentations in person.  Hart said, "Let me take off my HR hat, and let's talk

6    about packaging you out.  I'm worried about you being able to do your job.  We offer to

7    pay you, so your resume looks good.   I'll try to get you a one-year severance."

8    Harwood, stunned and confused about the phrase "packaging you out," responded that

9    she had a desire to return to work, but Hart discouraged her, saying, "If you've been

10   dealing with this since February, I'm not sure you will get better."   Harwood was

11   shocked, disbelieving, disappointed, discouraged, and hurt.  Harwood asked Hart, "Is it

12   common practice for you to offer a separation package when someone submits a leave of

13   absence?"  Hart replied that she did not normally do so, "but John's not going anywhere,

14   and you are in hell."  She also mentioned, "I've been dealing with the wrath of John for

15   many, many years."  She asked, "When do you think you will be back?" then threatened,

16   "If your leave takes long, we are going to terminate you."  Noticing Harwood's reluc-

17   tance to be "packaged out," Hart felt the need to raise the stakes to entice her and there-

18   fore promised to look into whether she could get Harwood an entire year of severance in

19   exchange for a release of all claims Harwood would have against defendants.  Harwood

20   was stunned that defendants were offering to pay her nearly $200,000.00 to sign a

21   release.

22       n.   The following week, while Harwood was still on medical leave, Hart con-

23   tacted her and said, "I talked to Mike Rude, senior vice president of human resources,

24   and he is offering nine months plus COBRA if you sign a non-retaliation agreement"—

25   admitting that Harwood was being "packaged out" in retaliation.  Hart also acknowl-

26   edged during the call that Yang, area vice president of operations, had contacted her and

27   said he was worried about Harwood's emotional state.  Since her formal complaint to

28   Option Care, Harwood was doing worse emotionally, her anxiety had increased, her in-

1   somnia was worse, and she suffered from severe headaches, heartburn, and acid reflux.

2        o.   On July 23, Harwood's leave was extended by 30 days, and she was advised

3   to see a therapist.   She immediately forwarded the extended leave note to Hart, who

4   responded that, because of the "extended leave, your access to Option Care will be dis-

5   abled."   At around the same time, plaintiff requested that, as an accommodation, she be

6   permitted to make presentations via telephone, rather than in person, during her healing

7   period when she returned to work.   Hart responded:   "I spoke to Mike Rude regarding

8   your accommodation; Mike said no.   It's your job to report in person on the forecast."

9   Then she said again, "John is not going anywhere, and we realize you are in hell.   I'm

10  worried about your well-being, so we are offering a separation package of nine months.

11  Let me spell out the next six months.   Your job is not protected today.   We don't know if

12  short-term disability is protected.   We can and will replace your job.   Even if your short-

13  term disability is approved, your job is only protected for 12 weeks.   If you are not better

14  by the 26 weeks, then Lincoln Financial will look at long-term disability.   If that happens

15  we will terminate employment.   Instead, we are offering you nine months of healing at

16  100 percent pay."

17       p.   Harwood then sent an e-mail to confirm that she had been offered the sev-

18  erance agreement, and Hart replied that defendants would offer only six months of

19  COBRA, rather than the full nine months.   Nevertheless, plaintiff learned that Yang, area

20  vice president of the west region, a male employee of Option Care, was permitted to

21  appear via telephone for the same presentation when he took time off for his son's sports

22  tournament out of town.

23       q.   On August 22, Harwood's physician extended her leave to September 30.

24  Harwood feared that her employment would be terminated as a result of the extension of

25  her leave.   In fact, her fears were validated when, on August 24, defendant Rude in

26  human resources gave her an ultimatum:   "We need you to return to your role as AVP

27  sales on Monday, August 27, 2018 . . .   If you do not return to work on August 27th and

28  we do not receive your decision on the salary continuation and COBRA subsidy offer by

Friday, August 30, 2018, we will assume that you are choosing to voluntarily resign from Option Care and we will take the necessary actions to terminate your employment effective August 31, 2018." On the same day, Harwood, who was deeply hurt and shaken by the abrupt correspondence, responded to Rude, "I am not voluntarily resigning. This is beyond hurtful." Despite her response, on August 31, Rude told Harwood, without any basis, "I am assuming you will be signing the salary continuation and COBRA subsidy offer we extended (see attached)"—the same agreement that had initially been offered to plaintiff to "package her out." Harwood made no indication that she intended to sign the severance agreement.

20. *Defendants' termination of plaintiff's employment:* The next day, September 1, 2018, plaintiff was abruptly informed in writing that her employment was terminated. Harwood was devastated and in shock that defendants chose to terminate her employment, despite her physician's ordered medical leave.

21. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

22. *Non-economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

23. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

   a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions

1  against plaintiff because of her disability, medical leave, sex, gender, and/or good faith

2  complaints, and/or (b) defendants' conduct was despicable and committed in willful and

3  conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to

4  be free of discrimination, harassment, retaliation, abuse of the requirements of accom-

5  modation and engaging in the interactive process, and wrongful employment termina-

6  tion.

7          b. *Oppression:*   In addition, and/or alternatively, defendants' conduct was

8  committed with oppression within the meaning of California Civil Code section 3294,

9  including that defendants' actions against plaintiff because of her disability, medical

10  leave, sex, gender, and/or good faith complaints were "despicable" and subjected plain-

11  tiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work

12  place free of discrimination, harassment, retaliation, abuse of the requirements of accom-

13  modation and engaging in the interactive process, and wrongful employment termina-

14  tion.

15          c. *Fraud:*   In addition, and/or alternatively, defendants' conduct, as alleged,

16  was fraudulent within the meaning of California Civil Code section 3294, including that

17  defendants asserted false (pretextual) grounds for terminating plaintiff's employment

18  and/or other adverse job actions, thereby to cause plaintiff hardship and deprive her of

19  legal rights.

20      24. *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and

21  attorneys' fees.

22      25. *Exhaustion of administrative remedies:*  Prior to filing this action, plaintiff ex-

23  hausted her administrative remedies by filing a timely administrative complaint with the

24  Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-

25  sue letter.

26  ///

27  ///

28  ///

PLAINTIFF'S COMPLAINT FOR DAMAGES

# FIRST CAUSE OF ACTION

## (Violation of FEHA (Government Code § 12900,
## *et seq.*) (Discrimination, Harassment, and Retaliation
## on the Basis of Disability)—Against All Entity
## Defendants and Does 1 to 100, Inclusive)

26.   The allegations set forth in paragraphs 1 through 17 are re-alleged and incorpo-rated herein by reference.

27.   Plaintiff's actual, perceived, and/or history of disability and/or other character-istics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, to refuse to accommodate plaintiff, to refuse to engage in the interactive process, and/or to take other adverse job actions against plaintiff.

28.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to accommodate plaintiff's actual, perceived, and/or history of phys-ical disability, in violation of Government Code section 12940(m);

c.   Failing to engage in a timely, good faith interactive process to determine reasonable accommodation, in violation of Government Code section 12940(n);

d.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in viola-tion of Government Code section 12940(k);

e.   Retaliating against plaintiff for seeking to exercise rights guaranteed under

FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

f.  Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2;

g.  Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's actual, perceived, and/or history of physical disability and/or other protected characteristics, in violation of Government Code section 12940(j);

h.  Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including rights of reasonable accommodation, rights of interactive process, leave rights, and/or the right to be free of discrimination, in violation of Government Code section 12940(h);

i.  Failing to provide plaintiff with requisite statutory leave, violating notice and/or other procedural requisites of leave, and/or retaliating against plaintiff for taking leave, in violation of Government Code section 12945.2;

j.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on actual, perceived, and/or history of physical disability, in violation of Government Code section 12940(k).

29.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

30.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

31.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

32.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

## SECOND CAUSE OF ACTION

### (Violation of FEHA (Government § 12900, *et seq.*) (Discrimination, Harassment, and Retaliation on the Basis of Sex)—Against All Entity Defendants and Does 1 to 100, Inclusive)

33.   The allegations set forth in paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

34.   Plaintiff's sex and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision not to retain, hire, or otherwise employ plaintiff in any position and/or to take other adverse employment actions, including constructive employment termination, against plaintiff.

35.   During plaintiff's employment with defendants, defendants, through their supervisors and employees, engaged in a series of acts that had a negative impact on the treatment of female employees.

36.   During plaintiff's employment with defendants, defendants intentionally engaged in harassment on the basis of sex.

37.   Plaintiff is a qualified employee who performed her job in an exemplary manner.   Defendants subjected plaintiff to negative sex-based comments and to continuous harassing and threatening behavior.   Defendants intentionally harassed plaintiff in violation of the law.

38.   Defendants, through their managers and supervisors, made a number of comments to and about plaintiff that exhibited harassing motivations, intentions, and consciousness.

39.   On the basis of the above, plaintiff believes and alleges that defendants harassed her on the basis of her sex.

40.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Barring, discharging, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's sex and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on sex in violation of Government Code section 12940(k);

c.   Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, in violation of Government Code section 12940(h).

41.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

42.   As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

43.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, and oppressive manner, entitling plaintiff to punitive damages against defendants.

44.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

///

///

///

///

-16-

### THIRD CAUSE OF ACTION

### (Violation of FEHA (Government § 12900,

### *et seq.*) (Discrimination, Harassment, and

### Retaliation on the Basis of Gender)—Against All

### Entity Defendants and Does 1 to 100, Inclusive)

45.   The allegations set forth in paragraphs 1 through 36 are re-alleged and incorporated herein by reference.

46.   Plaintiff's gender and/or other characteristics protected by FEHA, Government Code section 12900, *et seq.,* were motivating factors in defendants' decision not to retain, hire, or otherwise employ plaintiff in any position and/or to take other adverse employment actions, including constructive employment termination, against plaintiff.

47.   During plaintiff's employment with defendants, defendants, through their supervisors and employees, engaged in a series of acts that had a negative impact on the treatment of female employees.

48.   During plaintiff's employment with defendants, defendants intentionally engaged in harassment on the basis of gender.

49.   Plaintiff is a qualified employee who performed her job in an exemplary manner.   Defendants subjected plaintiff to negative gender-based comments and to continuous harassing and threatening behavior.   Defendants intentionally harassed plaintiff in violation of the law.

50.   Defendants, through their managers and supervisors, made a number of comments to and about plaintiff that exhibited harassing motivations, intentions, and consciousness.

51.   On the basis of the above, plaintiff believes and alleges that defendants harassed her on the basis of her gender.

52.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.  Barring, discharging, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's gender and/or other protected characteristics, in violation of Government Code section 12940(a);

b.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on gender in violation of Government Code section 12940(k);

c.  Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, in violation of Government Code section 12940(h).

53.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

54.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

55.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent, and oppressive manner, entitling plaintiff to punitive damages against defendants.

56.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12940(a), (i), (m),

### (n)) (Failure to Provide Reasonable Accommodation)—

### Against All Entity Defendants and Does 1 to 100, Inclusive)

57.  The allegations set forth in paragraphs 1 through 48 are re-alleged and incorporated herein by reference.

58.  At all times herein mentioned, FEHA, Government Code section 12940(a), (i),

(m), and (n), was in full force and effect and was binding on defendants. This statute requires defendants to provide reasonable accommodations to known disabled employees. Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

59. Defendants wholly failed to attempt any reasonable accommodation of plaintiff's known disability. Defendants used plaintiff's disability and her need to take medical leave as an excuse for terminating plaintiff's employment.

60. Plaintiff believes and on that basis alleges that her disability and the need to accommodate her disability were substantial motivating factors in defendants' termination of her employment.

61. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

62. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

63. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

64. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

## FIFTH CAUSE OF ACTION

### (Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))—Against All Entity Defendants and Does 1 to 100, Inclusive)

65. The allegations set forth in paragraphs 1 through 56 are re-alleged and incorporated herein by reference.

66.   At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to engage in a timely, good faith interactive process to accommodate known disabled employees.  Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

67.   Defendants wholly failed to engage in a timely, good-faith interactive process with plaintiff to accommodate her known disabilities.  Instead, defendants terminated plaintiff's employment in part because of her disabilities.

68.   Plaintiff believes and on that basis alleges that her disability was a motivating factor in defendants' termination of her employment.

69.   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

70.   As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

71.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.  Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

72.   Defendants' misconduct was committed intentionally, in a malicious, despica-ble, oppressive manner, entitling plaintiff to punitive damages against defendants.

## SIXTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12940(k) (Failure
### to Prevent Discrimination, Harassment, and Retaliation)—
### Against All Entity Defendants and Does 1 to 100, Inclusive)

73.   The allegations set forth in paragraphs 1 through 64 are re-alleged and incorpo-

1   rated herein by reference.

2       74.   At all times herein mentioned, FEHA, Government Code section 12940(k), was

3   in full force and effect and was binding on defendants.  This statute states that it is an

4   unlawful employment practice in California for an employer "to fail to take all rea-

5   sonable steps necessary to prevent discrimination and harassment from occurring."  Prior

6   to filing the instant Complaint, plaintiff filed a timely administrative charge with the

7   DFEH and received a right-to-sue letter.

8       75.   During the course of plaintiff's employment, defendants failed to prevent their

9   employees from engaging in intentional actions that resulted in plaintiff's being treated

10  less favorably because of plaintiff's protected status (*i.e.,* her disability, medical leave,

11  sex, gender, and/or sexual orientation).  During the course of plaintiff's employment,

12  defendants failed to prevent their employees from engaging in unjustified employment

13  practices against employees in such protected classes.  During the course of plaintiff's

14  employment, defendants failed to prevent a pattern and practice by their employees of

15  intentional discrimination and harassment on the bases of disability, medical leave, sex,

16  gender, and/or other protected statuses or protected activities.

17      76.   Plaintiff believes and on that basis alleges that her disability, medical leave, sex,

18  gender, and/or other protected status and/or protected activity were substantial motivat-

19  ing factors in defendants' employees' discrimination and retaliation against her.

20      77.   As a proximate result of defendants' willful, knowing, and intentional miscon-

21  duct, plaintiff has sustained and continues to sustain substantial losses of earnings and

22  other employment benefits.

23      78.   As a proximate result of defendants' willful, knowing, and intentional miscon-

24  duct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and

25  physical and mental pain and anguish, all to her damage in a sum according to proof.

26      79.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

27  Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reason-

28  able attorneys' fees and costs (including expert costs) in an amount according to proof.

80.   Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

### (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause)—Against All Entity Defendants and Does 1 to 100, Inclusive)

81.   The allegations set forth in paragraphs 1 through 72 are re-alleged and incorporated herein by reference.

82.   Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause.  Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of her under the agreement by performing her job in an exemplary manner.

83.   Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with her.

84.   As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## EIGHTH CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)—Against All Entity Defendants and Does 1 to 100, Inclusive)

85.   The allegations set forth in paragraphs 1 through 76 are re-alleged and incorporated herein by reference.

86.   On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause.  This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

87.   Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with her.

88.   As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

89.   Plaintiff seeks attorneys' fees for lost wages under this cause of action under Labor Code section 218.6.

## NINTH CAUSE OF ACTION

### (Negligent Hiring, Supervision, and Retention—Against
### All Entity Defendants and Does 1 to 100, Inclusive)

90.   The allegations set forth in paragraphs 1 through 81 are re-alleged and incorporated herein by reference.

91.   Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities.  Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating

1 | against plaintiff.

2 | 92.   Defendants breached these duties.  As a result, defendants caused damages to

3 | plaintiff.  As a proximate result of defendants' negligent hiring, retention, and supervi-

4 | sion of their managers and employees, plaintiff has suffered and continues to suffer

5 | damages, including losses of earnings and benefits, according to proof.

### TENTH CAUSE OF ACTION

**(Wrongful Termination of Employment in Violation**

**of Public Policy (Labor Code § 1102.5; FEHA,**

**Government Code § 12900, *et seq.*)—Against All Entity**

**Defendants and Does 1 to 100, Inclusive)**

93.   The allegations set forth in paragraphs 1 through 84 are re-alleged and incorpo-
rated herein by reference.

94.   Defendants terminated plaintiff's employment in violation of various funda-
mental public policies underlying both state and federal laws.  Specifically, plaintiff's
employment was terminated in part because of her protected status (*i.e.,* disability, medi-
cal leave, sex, gender, and/or good faith complaints).  These actions were in violation of
FEHA, the California Constitution, and California Labor Code section 1102.5.

95.   As a proximate result of defendants' wrongful termination of plaintiff's em-
ployment in violation of fundamental public policies, plaintiff has suffered and continues
to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to
her damage in a sum according to proof.

96.   As a result of defendants' wrongful termination of her employment, plaintiff
has suffered general and special damages in sums according to proof.

97.   Defendants' wrongful termination of plaintiff's employment was done inten-
tionally, in a malicious, fraudulent, and/or oppressive manner, and this entitles plaintiff
to punitive damages.

98.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

-24-

Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* plaintiff is enti-
tled to recover reasonable attorneys' fees and costs in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

### (Violations of Labor Code § 1102.5, *et seq.*—Against
### All Entity Defendants and Does 1 to 100, Inclusive)

99.   The allegations set forth in paragraphs 1 through 90 are re-alleged and incorpo-
rated herein by reference.

100.   At all relevant times, Labor Code section 1102.5 was in effect and was binding
on defendants.  This statute prohibits defendants from retaliating against any employee,
including plaintiff, for raising complaints of illegality.

101.   Plaintiff raised complaints of illegality while she worked for defendants, and
defendants retaliated against her by discriminating against her, harassing her, and taking
adverse employment actions, including employment termination, against her.

102.   As a proximate result of defendants' willful, knowing, and intentional viola-
tions of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humili-
ation, emotional distress, and mental and physical pain and anguish, all to her damage in
a sum according to proof.

103.   As a result of defendants' adverse employment actions against plaintiff, plain-
tiff has suffered general and special damages in sums according to proof.

104.   Defendants' misconduct was committed intentionally, in a malicious, fraudu-
lent, and/or oppressive manner, and this entitles plaintiff to punitive damages against
defendants.

## TWELFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against
### All Defendants and Does 1 to 100, Inclusive)

105.   The allegations set forth in paragraphs 1 through 96 are re-alleged and incorpo-

-25-

PLAINTIFF'S COMPLAINT FOR DAMAGES

rated herein by reference.

106.  Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

107.  Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of her livelihood while she was suffering from an actual, perceived, and/or history of disability, would devastate plaintiff and cause her extreme hardship.

108.  As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

109.  As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

110.  Defendants' misconduct was committed intentionally, in a malicious, fraudulent, and/or oppressive manner, and this entitles plaintiff to punitive damages.

## PRAYER

WHEREFORE, plaintiff, Jennifer Harwood, prays for judgment against defendants as follows:

1.  For general and special damages according to proof;

2.  For exemplary damages, according to proof;

3.  For pre-judgment and post-judgment interest on all damages awarded;

4.  For reasonable attorneys' fees;

5.  For declaratory relief;

6.  For costs of suit incurred;

7.  For such other and further relief as the Court may deem just and proper.

1       ADDITIONALLY, plaintiff, Jennifer Harwood, demands trial of this matter by

2   jury.  The amount demanded exceeds $25,000.00 (Government Code § 72055).

3

4   Dated:  December 28, 2018        SHEGERIAN & ASSOCIATES, INC.

5

6                       By:

7                           Carney R. Shegerian, Esq.

8                           Attorneys for Plaintiff,
                        JENNIFER HARWOOD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-27-

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**12/28/2018**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Nancy Alvarez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>18STCV10315 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Barbara M. Scheper | 30 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 01/10/2019
_____ (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By Nancy Alvarez _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

### NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE