UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1239-MWF (ASx)          **Date:** May 2, 2019
Title:     Harwood v. Option Care Enterprises, Inc., et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
|  |  |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: MOTION TO REMAND TO STATE
COURT [9]

Before the Court is Plaintiff Jennifer Harwood's Motion to Remand to State
Court (the "Motion"), filed on March 21, 2019.  (Docket No. 9).  Defendants Option
Care Enterprises, Inc.; Option Care Home Care, Inc.; Option Care Home Health of
California, Inc.; Option Care, Inc.; Walgreen Co. (collectively, the "Entity
Defendants"); John C. Rademacher; Lori Hart; and Mike Rude (together with the
Entity Defendants, "Defendants") filed an Opposition on April 8, 2019.  (Docket No.
13).  Plaintiff filed a Reply on April 15, 2019.  (Docket No. 14).  The Court has read
and considered the papers filed in connection with the Motion and held a hearing on
April 29, 2019.

For the reasons discussed below, the Motion is **DENIED**.  Defendants have met
their burden of demonstrating that there is complete diversity of citizenship between
Plaintiff and each Defendant – except potentially for OCI.  Furthermore, Defendants
have met their heavy burden to show that OCI is a sham defendant.  Finally,
Defendants have met their burden to show that the amount in controversy exceeds
$75,000.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-1239-MWF (ASx)**                    **Date:  May 2, 2019**
Title:      Harwood v. Option Care Enterprises, Inc., et al.

## I.      BACKGROUND

### A.      Procedural Background

On December 28, 2018, Plaintiff commenced this action in the Los Angeles County Superior Court.  (*See* Complaint ("Compl.") (Docket No. 1-3)).

Plaintiff asserts twelve claims for relief: (1) discrimination, harassment, and retaliation on the basis of disability in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900, *et seq.*; (2) discrimination, harassment, and retaliation on the basis on sex in violation of FEHA, Cal. Gov't Code §§ 12900, *et seq.*; (3) discrimination, harassment, and retaliation on the basis of gender in violation of FEHA, Cal. Gov't Code §§ 12900, *et seq.*; (4) failure to provide reasonable accommodation in violation of FEHA, Cal. Gov't Code §§ 12940(a), (i), (m)-(n); (5) failure to engage in interactive process, Cal. Gov't Code §§ 12940(a), (i), (m)-(n); (6) failure to prevent discrimination, harassment, and retaliation in violation of FEHA, Cal. Gov't Code § 12940(k); (7) breach of express oral contract not to terminate employment without good cause; (8) breach of implied-in-fact contract not to terminate employment without good cause; (9) negligent hiring, supervision, and retention; (10) wrongful termination of employment in violation of public policy; (11) violation of Cal. Lab. Code §§ 1102.5, *et seq.*; and (12) intentional infliction of emotional distress.  (*Id.* ¶¶ 26-110).  Plaintiff alleges her twelfth claim for relief against all Defendants.  (*Id.* ¶¶ 105-110).  The other eleven claims for relief are alleged against only the Entity Defendants.  (*Id.* ¶¶ 26-104).

On January 18, 2019, Defendants Option Care Enterprises, Inc. ("OCE"); Option Care Home Care, Inc. ("OCHC"); Option Care Home Health of California, Inc. ("OCHHC"); Option Care, Inc. ("OCI"); and Walgreen Co. ("Walgreen") were served with a copy of the Summons and Complaint.  (Notice of Removal ("NoR") ¶ 2 (Docket No. 1)).  On February 7, 2019, Defendants John C. Rademacher ("Rademacher"), Lori Hart ("Hart"), and Mike Rude ("Rude") accepted service by notice of acknowledgment and receipt.  (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 19-1239-MWF (ASx)** **Date:** **May 2, 2019**
Title:      Harwood v. Option Care Enterprises, Inc., et al.

On February 19, 2019, Defendants timely removed the action, invoking the Court's diversity jurisdiction and asserting that OCI, Walgreen, Walgreen Boots Alliance, Co. ("WBA"), and Madison Dearborn Partners, LLC ("MDP") are sham defendants. (*See id.* ¶¶ 39-42). Defendants WBA and MDP have not been served but consent to removal of this action. (*Id.* ¶ 42).

## B.      **Factual Background**

Plaintiff, a 57-year-old Caucasian woman, began working for Option Care as the Area Vice President of Sales, West Region, on September 14, 2017. (Compl. ¶ 16). Plaintiff served in this position for one year and received only positive performance reviews. (*Id.* ¶¶ 16-17). On February 15, 2018, Plaintiff gave a presentation on strategic planning to thirty five Option Care leaders. (*Id.* ¶ 19(a)). At the end of Plaintiff's presentation, Rademacher slammed a stack of books down and angrily challenged Plaintiff in front everyone in the room. (*Id.*). Plaintiff was stunned by Rademacher's conduct and ran to the bathroom. (*Id.*). On February 17, 2018, Rademacher sent an email to the meeting attendees, which stated that his actions appeared to "unfairly single[] out" Plaintiff and "I challenged us to 'raise our game.'" (*Id.* ¶ 19(e)).

On February 23, 2018, Plaintiff visited her physician, who diagnosed her with anxiety, insomnia, and post-traumatic stress disorder and prescribed her medication. (*Id.* ¶ 19(g)). In March of 2018, Plaintiff attended a mandatory national sales meeting. (*Id.* ¶ 19(h)). This meeting was the first time that Plaintiff was in Rademacher's physical presence since her presentation. (*Id.*). Plaintiff felt tense and anxious during the meeting. (*Id.*).

In April of 2018, Rademacher scolded another female employee at a meeting in front of the same audience who was present at Plaintiff's presentation on February 15, 2018. (*Id.* ¶ 19(j)). The female employee filed a formal complaint against Rademacher. (*Id.*). On April 21, 2018, Rademacher sent an email to the meeting attendees regarding his conduct. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-1239-MWF (ASx)                Date:  May 2, 2019
Title:      Harwood v. Option Care Enterprises, Inc., et al.

On May 13, 2018, Plaintiff filed a complaint against Rademacher, alleging sex- and gender-biased treatment.  (*Id.* ¶ 19(k)).  Rude promised that Human Resources would investigate her complaint, but no investigation took place.  (*Id.*).

On July 16, 2018, Plaintiff was asked to do a presentation through a webinar. (*Id.* ¶ 19(l)).  Plaintiff froze and was unable to do the presentation because she feared that she would be attacked while presenting.  (*Id.*).  The next day, Plaintiff saw her doctor, who placed her on leave for one week.  (*Id.*).  When Plaintiff presented her medical leave note to Hart, the Director of Human Resources, Hart proposed a separation package and expressed concern about Plaintiff's ability to do her job.  (*Id.* ¶ 19(m)).  Hart also expressed doubts about whether Plaintiff would get better and said Plaintiff would be terminated if she took a long leave.  (*Id.*).

During the following week, while Plaintiff was on leave, Hart contacted Plaintiff again regarding a separation package.  (*Id.* ¶ 19(n)).  On July 23, Plaintiff's leave was extended by thirty days.  (*Id.* ¶ 19(o)).  On August 22, 2018, Plaintiff's physician extended her leave to September 30, 2018.  (*Id.* ¶ 19(q)).  On August 24, 2018, Rude informed Plaintiff that if she did not return to work by August 27, 218, it would be assumed that Plaintiff was choosing to voluntarily resign.  (*Id.*).  On September 1, 2018, Plaintiff was informed in writing that her employment was terminated.  (*Id.* ¶ 20).

On December 28, 2018, Plaintiff commenced this action in the Los Angeles County Superior Court against the Entity Defendants and her supervisors.  (*See generally* Compl.).  Through her Complaint, Plaintiff seeks economic damages, noneconomic damages, punitive damages, and attorneys' fees.  (*Id.* ¶¶ 21-24).  Prior to filing this action, Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.  (*Id.* ¶ 25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 19-1239-MWF (ASx)**                    **Date:  May 2, 2019**
Title:      Harwood v. Option Care Enterprises, Inc., et al.

## II.    LEGAL STANDARD

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"  28 U.S.C. § 1441(a).  A federal district court has diversity jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and the adverse parties are citizens of different states.  28 U.S.C. § 1332(a)(1).  "Complete diversity of citizenship" is required, such that each plaintiff must be diverse from each defendant.  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996).  Even if there is complete diversity of citizenship, an action may not be removed solely on the basis of diversity jurisdiction if any of the properly joined and served defendants is a citizen of the forum state.  *See* 28 U.S.C. § 1441(b)(2).

A removing defendant bears the burden of establishing that removal is proper.  *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant").  If there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve that doubt in favor of remanding the action to state court.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

## III.    REQUEST FOR JUDICIAL NOTICE

In conjunction with the Motion, Plaintiff requests that the Court take judicial notice of four exhibits: (1) Walgreen's webpage regarding the number of Walgreen stores throughout the United States, (2) a press release found on Walgreen's website that describes Walgreen, WBA, and MDP's ownership interest in Option Care, (3) a certificate of amendment of OCI's articles of incorporation, and (4) business entity search results for "Option Care, Inc." from the California Secretary of State website.

**Case No.  CV 19-1239-MWF (ASx)**               **Date:  May 2, 2019**
**Title:**      Harwood v. Option Care Enterprises, Inc., et al.

---

(Request for Judicial Notice ("RJN") at 3 (Docket No. 10)).  Defendants do not oppose this request.

"[A] court may take judicial notice of 'matters of public record.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).  The certificate of amendment of OCI's articles of incorporation, filed with the California Secretary of State on June 13, 1984, is a matter of public record.  *See Quiroz v. Sabatino Truffles N.Y., LLC*, No. SA CV 17-0783-DOC (KES), 2017 WL 8223648, at *3 (C.D. Cal. Sept. 18, 2017) (taking judicial notice of defendant corporation's articles of incorporation).  Likewise, the business entity search results from the California Secretary of State website is a public record and a proper subject of judicial notice.  *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) ("[T]he accuracy of the results of records searches from the Secretary of State for the State of California corporate search website can be determined by readily accessible resources whose accuracy cannot reasonably be questioned.").  Accordingly, Plaintiff's RJN is **GRANTED** with respect to Exhibits 3 and 4.

The Court concludes, however, that judicial notice of the other documents is unnecessary, as it does not rely on them in reaching its rulings below.  *See, e.g.*, *Jones v. Best Serv. Co.*, No. CV 14-9872 SS, 2017 WL 490902, at *5 (C.D. Cal. Feb. 6, 2017).  Because these documents are immaterial to the Court's decision, Plaintiff's RJN is **DENIED** *as moot* with respect to Exhibits 1 and 2.

## IV.    EVIDENTIARY OBJECTION

Plaintiff objects to Defendants' inclusion of her settlement communication to establish the amount in controversy, arguing that it is privileged under Federal Rule of Evidence 408.  (Mot. at 19; *see* Declaration of Mike Rude ("Rude Decl.") ¶ 10, Ex. B

---

Case No. **CV 19-1239-MWF (ASx)**        Date:  **May 2, 2019**
Title:       Harwood v. Option Care Enterprises, Inc., et al.

(Docket No. 1-2)).  As Defendants correctly point out, Plaintiff's argument relies on a misinterpretation of the Rule.  (Opp. at 21).

Although Rule 408 precludes the use of settlement communications to establish a claim's validity or amount, their use is permissible to determine the amount in controversy when considering the propriety of removal.  *Graybill v. Khudaverdian*, No. SACV 15-01627-CJC(JCGx), 2015 WL 7295378, at \*4 (C.D. Cal. Nov. 17, 2015) (quoting *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.3 (9th Cir. 2002)) ("[I]n the removal context, settlement letters are not offered to show the amount of a defendant's liability—a prohibited use under [Rule] 408—but are instead used to show a plaintiff's 'assessment of the value' of his claim—a permissible use.").  "A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."  *Cohn*, 281 F.3d at 840 (citations omitted).

Here, Defendants submitted Plaintiff's settlement communication to show that Plaintiff assessed the value of her claims at more than $75,000.  (NoR ¶ 33; Opp. at 19-21).  Plaintiff's letter does not demand a specific amount but details five verdicts, ranging from $800,000 to $16.6 million, that Plaintiff's counsel obtained in 2017 and 2018.  (NoR, Ex. B at 20).  The letter states that these verdicts were awarded in "single-plaintiff cases brought under provisions of FEHA" and suggests that they were "similar to this matter, many involving facts that were significantly less persuasive." (*Id.*).  Therefore, the Court concludes that the letter reflects Plaintiff's reasonable valuation of her claims at far more than $75,000, and the letter is admissible for the limited purpose of assessing the amount in controversy.

Accordingly, Plaintiff's evidentiary objection is **OVERRULED**.

## V.    **DISCUSSION**

Plaintiff contends that this Court lacks jurisdiction and the action should be remanded to the Superior Court for four reasons: (1) complete diversity of citizenship does not exist; (2) OCI, Walgreen, WBA, and MDP are not sham defendants; (3) Plaintiff can amend her Complaint to recover against OCI, Walgreen, and WBA; and

CIVIL MINUTES—GENERAL

**Case No.  CV 19-1239-MWF (ASx)**          **Date:  May 2, 2019**
**Title:**     Harwood v. Option Care Enterprises, Inc., et al.

(4) the amount in controversy requirement is not satisfied.  (Mot. at 1-2).  The Court addresses each argument in turn.

## A.     **Diversity of Citizenship**

### 1.     **Citizenship of Parties**

The parties do not dispute that Plaintiff is a California citizen.  (*See* Mot. at 7-8; Opp. at 10).  Defendants allege, and Plaintiff does not deny, that OCE, OCHC, OCHHC, MDP, Rademacher, Hart, and Rude are not California citizens.  (NoR ¶¶ 3-4; Opp. at 10).  Thus, the parties only dispute the citizenship of Walgreen, WBA, and OCI.

As to Walgreen and WBA, Plaintiff asserts that they are California citizens because their principal places of business are in California.  (Mot. at 11).  Plaintiff relies on *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495 (9th Cir. 2001), to argue that Walgreen and WBA's principal places of business are in California because their operations in California substantially predominate over their operations in other states.  (*Id.* at 10).  Defendants correctly note that Plaintiff's argument relies on an outdated test.  (Opp. at 10).

The Supreme Court has held that a corporation's principal place of business is its nerve center.  *Hertz v. Friend*, 559 U.S. 77, 92-93 (2010).  Although it did not explicitly reject the "substantial predominance" test, as Plaintiff argued at the hearing, the *Hertz* Court aimed to provide "a single, more uniform interpretation" in light of the circuit courts' "divergent and increasingly complex interpretations."  *Id.*; *see, e.g.*, *Blowers v. CVS Caremark*, No. 2:17-cv-08382-RSWL-SS, 2018 WL 987219, at *3 (C.D. Cal. Feb. 16, 2018) ("In [] ruling [that the 'nerve center' test is the appropriate test], *Hertz* overturned cases finding that determining a company's principal place of business requires an investigation into 'total activities' or 'substantial predominance' of operations."); *Balian v. Home Depot U.S.A., Inc.*, No. CV 17-04837-BRO (MRWx), 2017 WL 4083563, at *3 (C.D. Cal. Sept. 14, 2017) ("According to the Supreme

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-1239-MWF (ASx)              Date:  May 2, 2019
Title:      Harwood v. Option Care Enterprises, Inc., et al.

Court's holding in *Hertz*, the 'substantial predominance' test, previously used by the Ninth Circuit . . . is no longer valid."); *Langevin v. Fed. Exp. Corp.*, No. CV 14-08105 MMM (FFMx), 2015 WL 1006367, at *4 (C.D. Cal. Mar. 6, 2015) ("The substantial predominance test was rejected by the Supreme Court in *Hertz*.").  Therefore, Plaintiff applied the incorrect legal standard in arguing that Walgreen and WBA are California citizens.

In her Reply, Plaintiff contends that Defendants fail to meet their burden because they provide "zero proof" to support their contention that Walgreen and WBA are Illinois citizens.  (Reply at 3-5).  Plaintiff further contends that the Declarations of Mike Rude and Michael Shapiro are self-serving, conclusory, and deficient because neither declarant "admit[s] to being Walgreen or [WBA] executives or having personal knowledge of [] Plaintiff's relationship with the entities."  (*Id.* at 4).  The Court finds these arguments unavailing.

A notice of removal need only "contain[] a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  "A removing defendant . . . need only allege facts sufficient to establish a party's citizenship in its notice of removal; it need not adduce evidence supporting those facts."  *Zeppeiro v. Green Tree Servicing, LLC*, No. 2014 WL 12596312, at *6 (C.D. Cal. June 16, 2014) (citations omitted); *Silva v. Wells Fargo Bank NA*, No. , 2011 WL 2437514, at *3 (C.D. Cal. June 16, 2011) ("[J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds [$75,000], so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner." (internal quotation marks and citation omitted)).

In their Notice of Removal, Defendants allege that Walgreen and WBA are Illinois corporations with their principal places of business—their headquarters—in Illinois.  (NoR ¶ 11).  Michael Shapiro, the President, Chief Financial Officer, and Treasurer of OCE, declared under the penalty of perjury that he possesses "personal knowledge of the facts" and "could and would competently testify" to them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1239-MWF (ASx)          **Date:** May 2, 2019
Title:      Harwood v. Option Care Enterprises, Inc., et al.

(Declaration of Michael Shapiro ("Shapiro Decl.) ¶ 1 (Docket No. 1-1)).  Therefore,
Defendants have sufficiently established that Walgreen and WBA are Illinois, and not
California, citizens.

Plaintiff, in turn, has not adduced sufficient evidence to rebut Defendants'
allegations.  *See Zeppeiro*, 2014 WL 12596312, at *7 ("Arguments in a party's brief
are not competent evidence and do not suffice to show that a party's citizenship is
other than what is alleged in a notice of removal.") (citations omitted).  As explained
above, Plaintiff's only purported evidence does not actually establish that Walgreen
and WBA's principal places of business are in California because she relies on the
incorrect legal standard.  The Court therefore concludes that Defendants have met their
burden of showing that Walgreen and WBA are Illinois citizens.

As to OCI, the parties do not dispute that OCI is a California citizen.  (Mot. at 8;
*see* RJN, Ex. 3-4).  Rather, Defendants contend that OCI is a fraudulently joined or
sham defendant, and its citizenship should not be considered in determining whether
complete diversity exists.  (Opp. at 12).  The Court finds that every other Defendant is
diverse from Plaintiff—that is, none of the other Defendants are citizens of California,
like Plaintiff.

Accordingly, the complete diversity requirement is satisfied if, and only if,
OCI's California citizenship is disregarded.

## 2.      Fraudulent Joinder

A defendant is fraudulently joined if the defendant cannot be liable to the
plaintiff on any theory alleged in the complaint.  *See Maffei v. Allstate Cal. Ins. Co.*,
412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006) (citing *Ritchey v. Upjohn Drug Co.*, 139
F.3d 1313, 1318 (9th Cir. 1998)).  Not surprisingly, then, "[a] defendant invoking
federal court diversity jurisdiction on the basis of fraudulent joinder bears a 'heavy
burden' since there is a 'general presumption against [finding] fraudulent joinder.'"

**Case No.** CV 19-1239-MWF (ASx)          **Date:** May 2, 2019
Title:      Harwood v. Option Care Enterprises, Inc., et al.

*Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)).

Even when a pleading contains insufficient allegations to state a claim for relief against a non-diverse defendant, a remand is proper "where defendant fail[s] to show that plaintiff would not be granted leave to amend his complaint to cure the asserted deficiency by amendment." *Johnson v. Wells Fargo & Co.*, No. CV 14-06708 MMM JCX, 2014 WL 6475128, at \*8 (C.D. Cal. Nov. 19, 2014) (quoting *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009)). "Consequently, if a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden of showing fraudulent joinder has not been met." *Martinez v. Michaels*, No. CV 15-02104 MMM (EX), 2015 WL 4337059, at \*5 (C.D. Cal. July 15, 2015).

When considering a claim of fraudulent joinder, district courts may consider the complaint as well as other information presented by the parties. *Ritchey*, 139 F.3d at 1318 (holding that where fraudulent joinder is at issue, courts may look beyond complaint); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (considering complaint and affidavits to determine fraudulent joinder); *Gloger v. Lynch*, No. CV 16-05445-CAS-E, 2016 WL 4770015, at \*4 (C.D. Cal. Sept. 2, 2016) ("Courts may consider affidavits or other evidence (presented by either party) on the issue of whether a particular defendant's joinder is sham or 'fraudulent.'") (citations omitted).

Plaintiff argues that Defendants fail to show that OCI is a sham defendant because Defendants have not established that OCI is not a single employer, joint employer, or employer by way of aiding and abetting under FEHA. (Mot. at 15-16). Specifically, Plaintiff argues that Shapiro's declaration is insufficient to support Defendants' contention that OCI is a sham defendant because it is conclusory, and Shapiro lacks personal knowledge of his statements about OCI. (*Id.*).

As a preliminary matter, Plaintiff's argument that Shapiro lacks personal knowledge misses its mark. Shapiro declared under the penalty of perjury that he possesses "personal knowledge of the facts" and "could and would competently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 19-1239-MWF (ASx)          Date:  May 2, 2019
Title:      Harwood v. Option Care Enterprises, Inc., et al.

testify" to them.  (Shapiro Decl. ¶ 1).  Shapiro states that he is the President, Chief Financial Officer, and Treasurer of OCI.  (*Id.* ¶ 5).  Moreover, he is one of only two officers of OCI.  (*Id.*).  Therefore, it is reasonable to believe that Shapiro has personal knowledge of his own statements regarding OCI.  *See Chavez v. Amerigas Propane, Inc.*, No. CV 12-07524 MMM EX, 2013 WL 25882, at *1 n.5 (C.D. Cal. Jan. 2, 2013) (citing *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2001); *Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)) (concluding that the declarant had sufficient foundation to testify as to the corporation's nerve center where she stated that she had personal knowledge of the facts in her declaration and was senior counsel for the corporation).

Plaintiff's first theory is that OCI may be held liable under FEHA if it is a single employer with another Entity Defendant.  (Mot. at 14-16).  Under an "integrated enterprise" test, courts consider four factors to determine if corporate entities are a single employer: (1) interrelated operations; (2) common management; (3) centralized control of labor operations; and (4) common ownership or financial control.  *Miller v. Swiss Re Underwriters Agency, Inc.*, No. CV 09-09551 DDP (JEMx), 2010 WL 935697, at *2 (quoting *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737, 80 Cal. Rptr. 2d 454 (1998)).  Centralized control of labor relations is often deemed the most important factor, and common ownership or control alone is never sufficient to establish parent liability.  *Laird*, 68 Cal. App. 4th at 738.  Plaintiff contends that there is a possibility that OCI is a single employer with the other Entity Defendants, pointing to the fact that Shapiro is the President, Chief Financial Officer, and Treasurer of both OCI and OCE.

In his declaration, Shapiro states that OCI has no employees, has been a shell company since before Plaintiff became employed by OCI, never employed Plaintiff, and was not involved in any decision to hire her or terminate her employment.  (Shapiro Decl. ¶ 5).  Shapiro also states that OCI and OCE have never had any ownership interest in each other.  (*Id.* at ¶ 6).  Based on these facts, the Court is unconvinced that Plaintiff has any possibility of stating a claim against OCI under the single employer theory.  *See Maffei*, 412 F. Supp. 2d at 1053 (finding that a nondiverse

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-1239-MWF (ASx)                Date:  May 2, 2019
Title:      Harwood v. Option Care Enterprises, Inc., et al.

corporate defendant had been fraudulently joined and could not be held liable to plaintiffs on any theory alleged in their complaint where defendant was a shell company that had never had employees, offices, assets, or operations); *Miller*, 2010 WL 935697, at *3 (concluding that the integrated enterprise test was not met where corporate defendant had no employees and its only relation to the other entity was common parentage).

Plaintiff's second theory is that OCI may be liable under FEHA if OCI is a joint employer.  (Mot. at 14).  In determining whether a defendant is a joint employer for the purposes of FEHA, courts consider the "'totality of the circumstances' that reflect upon the nature of the work relationship of the parties." *Kasperzyk v. Shetler Sec. Servs., Inc.*, No. C-13-3358 EMC, 2014 WL 1760040, at *6 (N.D. Cal. May 2, 2014) (quoting *Vernon v. State of California*, 116 Cal. App. 4th 114, 124, 10 Cal. Rptr. 3d 121 (2004)).  The key factor is whether the entity has "the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed." *Id.* (quoting *Doe v. Wal-Mart*, 572 F.3d 677, 682 (9th Cir. 2009)).

As stated above, Defendants have sufficiently established that OCI is a shell corporation with no employees, and only OCE employees had the right to control the means and manner of Plaintiff's employment.  (Shapiro Decl. ¶ 5; Rude Decl. ¶ 9).  Plaintiff has neither challenged any of these facts nor alleged any facts in support of her theory that OCI employed her.  Plaintiff only alleges that OCI and OCE has Shapiro as a common board member, but this fact is unavailing.  (Mot. at 16).  Because OCI has no employees or managers, the Court finds that Plaintiff could not possibly assert that OCI oversaw day-to-day operations and made personnel decisions affecting Plaintiff.  *See Helmick v. Dave & Buster's Inc.*, No. , 2018 WL 1322110, at *5 (C.D. Cal. Mar. 14, 2018) (concluding that defendants had met their heavy burden of demonstrating fraudulent joinder where "[b]eyond mere speculation," plaintiff had not refuted evidence that another entity oversaw the day-to-day functions of employees, including plaintiff, and that entity's employees were the "sole-decision-makers with respect to scheduling, hiring, firing, and disciplinary actions").

**Case No.  CV 19-1239-MWF (ASx)**                  **Date:  May 2, 2019**
Title:      Harwood v. Option Care Enterprises, Inc., et al.

Plaintiff's third theory is that OCI may be liable under FEHA by way of aiding and abetting.  (Mot. 14-15, 17).  Plaintiff asserts no specific facts in support of this theory.  "The concept of aiding and abetting involves two separate persons, one helping the other[,] and . . . [a] corporation can only act through its individual employees."  *Janken v. GM Hughes Elec.*, 46 Cal. App. 4th 55, 77, 53 Cal. Rptr. 2d 741 (1996).  Because it had no employees, OCI could not have aided and abetted any alleged FEHA violations.  Therefore, the Court concludes that Plaintiff could not possibly state a claim against OCI under this theory.

Plaintiff also argues that she can amend her Complaint to recover against OCI.  (Mot. at 17).  Based on the reasons set forth above, the Court disagrees.  All of the claims against OCI depend on the existence of a type of employer-employee relationship or aiding and abetting by OCI.  Amendment would be futile because Defendants offered facts to demonstrate why OCI could not be liable on any theory, and Plaintiff did not dispute or refute those facts.  Therefore, the Court determines that Defendants established that there is ***no possibility*** that Plaintiff can state a claim against OCI.

As to Walgreen and WBA, the Court need not address whether they are sham defendants because of its above conclusion that they are Illinois citizens and therefore diverse.

As to MDP, the parties do not dispute that MDP is diverse.  (NoR ¶ 12; Opp. at 17).  Therefore, the Court need not consider whether MDP is a sham defendant.

Because the adverse parties, excluding sham defendant OCI, are citizens of different states, the Court concludes that the complete diversity of citizenship requirement is met.

## B.      Amount in Controversy

The Ninth Circuit employs the following framework for determining the amount in controversy on removal.  First, a "court may consider whether it is 'facially

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 19-1239-MWF (ASx)**          **Date:** **May 2, 2019**
Title:      Harwood v. Option Care Enterprises, Inc., et al.

apparent' from the complaint that the jurisdictional amount is in controversy." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the court may consider the facts in the removal petition and require parties to submit "summary-judgment-type evidence" relevant to the amount in controversy. *Id.*; *see also Corbelle v. Sanyo Elec. Trading Co.*, No. CV03-01509, 2003 WL 22682464, at \*3 (N.D. Cal Nov. 4, 2003). "[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (citation omitted). Here, neither party appears to dispute that it is not facially apparent from the Complaint that the amount in controversy requirement is met.

### 1.      Settlement Letter

Plaintiff objects to Defendants' use of her settlement communication to establish the amount in controversy, arguing that it is privileged under Federal Rule of Evidence 408 and speculative. (Mot. at 19). "A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn*, 281 F.3d at 840. "Where a plaintiff does not 'disavow his letter or offer contrary evidence,' the letter may be taken as 'sufficient to establish the amount in controversy.'" *Balian*, 2017 WL 4083563, at \*3 (quoting *Cohn*, 281 F.3d at 840). As discussed above, Plaintiff's settlement communication may be considered in calculating the amount in controversy.

Plaintiff's letter describes five recent verdicts, ranging from $800,000 to $16.6 million, that Plaintiff's counsel states were awarded in "single-plaintiff cases brought under provisions of FEHA." (NoR, Ex. B at 20). Plaintiff suggests that the cases were "similar to this matter, many involving facts that were significantly less persuasive." (*Id.*). Plaintiff argues, and the Court agrees, that the amounts appear somewhat speculative. The Court nonetheless finds that they are informative as to Plaintiff's subjective valuation of the amount in controversy. Although the range of amounts is wide, all of them are well above the jurisdictional requirement of $75,000.

**Case No.  CV 19-1239-MWF (ASx)**              **Date:  May 2, 2019**
Title:      Harwood v. Option Care Enterprises, Inc., et al.

### 2.      Lost Wages

Even if the Court disregards the settlement letter, the amount in controversy is clearly satisfied.  Defendants establish that Plaintiff was compensated at a rate of more than $200,000 for her final year of employment with OCE.  (Rude Decl. ¶ 5).  At the time of removal, lost wages alone amounted to more than $80,000.  (NoR ¶ 35).  Plaintiff argues that Defendants fail to account for Plaintiff's mitigation efforts, but she has not specifically alleged or presented evidence which disputes that the actual amount of damages Plaintiff seeks is less than the amount stated in Defendants' Notice of Removal.  Therefore, the Court finds that the preponderance of the evidence supports an amount in controversy of more than $75,000.  Because the amount in controversy requirement for removal is met, the Court need not consider emotional distress damages, punitive damages, and attorneys' fees in its calculation.

In sum, the Court concludes that complete diversity of citizenship exists and the amount in controversy exceeds $75,000.  Accordingly, this Court has subject matter jurisdiction, and removal was proper.

## VI.   REQUEST FOR ATTORNEYS' FEES AND COSTS

Plaintiff seeks $5,400 in attorneys' fees and costs incurred as a result of Defendants' removal.  (Mot. at 20-21).  Given that removal was proper, that request is **DENIED**.

Accordingly, the Motion is **DENIED**.

IT IS SO ORDERED.